IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TONI CLARK, | CASE NO. 3:22-cv-00589-DAC |
| Plaintiff, | MAGISTRATE JUDGE DARRELL A. CLAY |
| vs. | **MEMORANDUM OF OPINION AND ORDER DISMISSING CASE WITHOUT PREJUDICE** |
| RIDI ACCOUNTING, LLC d/b/a S&G STORES., | |
| Defendants. | |

INTRODUCTION AND BACKGROUND FACTS

On April 12, 2022, Plaintiff Toni Clark filed suit against Defendant Ridi Accounting, LLC d/b/a S&G Stores. (ECF #1 at PageID 1). Ms. Clark asserted that she was unlawfully terminated based on her disability, in violation of federal and state law. (*Id.*). She sought the following relief:

> Plaintiff demands a judgment ordering reinstatement to her position together with lost back pay seniority and benefits or in the alternative for an award of lost back pay and front pay in lieu of reinstatement and judgment against Defendant for compensatory and punitive damages for emotional distress, anxiety, humiliation and embarrassment plus her costs, interest and reasonable attorney fees all in an amount in excess of Twenty Five Thousand Dollars ($25,000.00). Plaintiff also seeks an amount of liquidated damages equal to her damages and her costs and attorney's fees all together with prejudgment and post judgment interest. Plaintiff further prays for whatever other legal or equitable relief [s]he may appear to be entitled to.

(*Id.* at PageID 6).

S&G Stores filed an Answer on May 13, 2022, in which it denied it was liable to Ms. Clark. (ECF #6 at PageID 28). As one of its affirmative defenses, S&G Stores asserted that Ms. Clark's claims "are barred for failure to abide by the dispute resolution requirement including but

1

not limited to arbitrate any dispute, controversy, difference and/or claim arising out of or relating to the employment relationship." (*Id.* at PageID 34). In another affirmative defense, S&G Stores maintained that Ms. Clark's "claims are subject to and bound by the arbitration provisions of the Employment Policy and Procedure Manual." (*Id.* at PageID 35).

In the Report of Parties' Planning Meeting filed on July 10, 2022, the parties consented to my exercising jurisdiction over this matter pursuant to 28 U.S.C. § 636(c). (ECF #8).

On August 4, 2022, S&G Stores filed a Motion to Compel Arbitration. (ECF #10). The motion alleged that Ms. Clark signed an agreement entitled "S&G Stores Arbitration" (Agreement) when she began her employment with the company in April 2019. (ECF #10 at PageID 50). In pertinent part, the Agreement provides as follows:

<div style="border:1px solid black; padding:1em;">

**S&G Stores Arbitration**

**Dispute Resolution**

A.     Any dispute, controversy, difference and/or claim arising out of or relating to the employment relationship between the employee and the company including without limitation any dispute, difference, claim and/or controversies, shall be exclusively resolved by binding arbitration upon a Party's submission of the dispute to arbitration. . .

D.     The arbitration shall be conducted in accordance with the then existing Commercial Rules of the American Arbitration Association. The American Arbitration Association shall not be used to facilitate the arbitration. . .

I.      The arbitrator shall have no authority to award punitive, consequential, and special, and/or indirect damages. The arbitrator shall not be entitled to issue injunctive and other equitable relief.

J.      Each party shall pay its own proportionate share of the arbitrator fees and expenses. Each party is responsible for their own legal fees, costs, expert witness fees and any other costs or fees associated with the arbitration.

</div>

(*Id.* at PageID 56). Additionally, Section L of the S&G Stores "Policy and Procedure Manual" reiterates the provisions of the Agreement. (*Id.* at PageID 70-71).

2

Ms. Clark submitted her acknowledgement of, and agreement to, the Policy and Procedure Manual via e-mail on April 23, 2019. (*Id.* at PageID 81). Among other things, the submittal e-mail stated that Ms. Clark "ha[s] read the Policy & Procedure manual and understand[s] all of the policies contained therein," "ha[s] discussed any questions about these policies with [her] manager, district manager or team leader," and "agree[s] to abide by these policies and procedures at all times during [her] employment with" S&G Stores on penalty of potential termination. (*Id.*). S&G Stores also submitted an Affidavit from Richard Van Meter, its Vice President of Operations, that authenticated the copies of the Agreement and the Policy & Procedures Manual. (*Id.* at PageID 54-55).

On August 24, 2022, Ms. Clark filed her Memorandum in Opposition to Defendant's Motion to Compel Arbitration. (ECF #11). S&G Stores filed its Reply in Support of Motion to Compel Arbitration on September 9, 2022. (ECF #13).

For the following reasons, I conclude Ms. Clark must submit her claims against S&G Stores to binding arbitration consistent with the Agreement. Accordingly, subject to the excision of the limitation on remedies provision discussed below, I hereby **GRANT** the Motion to Compel Arbitration and **DISMISS** this case without prejudice.

LAW AND ANALYSIS

I.     **An order compelling Ms. Clark to arbitrate her claims against S&G Stores is appropriate.**

In the Sixth Circuit, a court confronted with a request to compel arbitration must resolve "a number of threshold determinations" before issuing such an order. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). These include: (1) whether the parties agreed to arbitration; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether

Congress intended those claims to be non-arbitrable; and (4) whether to stay the remainder of the proceedings pending arbitration if some, but not all, of the claims in the action are subject to arbitration. *Id.* "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Id.*

Here, Ms. Clark does not dispute that she signed the Agreement. She does not claim she did not agree to the terms of the Policy & Procedure Manual. She also does not challenge the scope of the agreement to arbitrate, does not claim that she has asserted non-arbitrable federal statutory claims, and makes no argument regarding stay or dismissal of this matter if arbitration is required. Rather, she posits that mandatory arbitration of her claims against S&G Stores is not required because of the cost-sharing and limitation of remedies provisions in the Agreement and the Policy & Procedure Manual. (*Id.* at PageID 86-90). Ms. Clark also maintains the arbitration requirements of the Agreement and the Policy & Procedure Manual are unconscionable under Ohio law, rendering them invalid. (*Id.* at PageID 91). Finally, Ms. Clark asserts that because the Agreement and the Policy & Procedure Manual do not contain a severability clause, those documents cannot be reformed to excise any impermissible terms, and thus they must be invalidated in their entirety—meaning there is no agreement to arbitrate in the first place. (*Id.* at PageID 92). I address these arguments in turn.

     **A.**    **Ms. Clark has not established that the cost-sharing provisions of the Agreement and the Policy & Procedure Manual deny her or similarly-situated S&G Stores employees an effective forum for vindication of statutory rights.**

In *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003) (en banc), the Sixth Circuit addressed whether a "cost-splitting" provision of an arbitration agreement denies a litigant an effective forum for the vindication of statutory rights. *Id.* at 658. In its so-called "Revised Case-

by-Case Approach," the Sixth Circuit comprehensively outlined the following inquiry that a court

must undertake:

> We hold that potential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum. Our approach differs from the case-by-case approach advocated in *Bradford* by looking to the possible "chilling effect" of the cost-splitting provision on similarly situated potential litigants, as opposed to its effect merely on the actual plaintiff in any given case. . . . [F]ederal anti-discrimination statutes play both a remedial and deterrent role. Although the former role is largely a matter of the rights of particular aggrieved individuals, the latter is a question of "broader social purposes." The deterrent function of the laws in question is, in part, that employers who engage in discriminatory practices are aware that they may incur liability in more than one case. If, however, a cost-splitting provision would deter a substantial number of potential litigants, then that provision undermines the deterrent effect of the anti-discrimination statutes. Thus, in order to protect the statutory rights at issue, the reviewing court must look to more than just the interests and conduct of a particular plaintiff. A particular plaintiff may be determined to pursue his or her claims, regardless of costs. But a court considering whether a cost-splitting provision is enforceable should consider similarly situated potential litigants, for whom costs will loom as a larger concern, because it is, in large part, their presence in the system that will deter discriminatory practices. . . .
>
> For this reason, if the reviewing court finds that the cost-splitting provision would deter a substantial number of similarly situated potential litigants, it should refuse to enforce the cost-splitting provision in order to serve the underlying functions of the federal statute. In conducting this analysis, the reviewing court should define the class of such similarly situated potential litigants by job description and socioeconomic background. It should take the actual plaintiff's income and resources as representative of this larger class's ability to shoulder the costs of arbitration. But, as one district court has noted, [this inquiry] "does not necessarily mandate a searching inquiry into an employee's bills and expenses." *Giordano v. Pep Boys–Manny, Moe & Jack, Inc.*, No. CIV. A. 99–1281, 2001 WL 484360, at *6 (E.D.Pa. March 29, 2001). "[N]othing in *Green Tree* [*Financial Corp.-Alabama v. Rudolph*, 531 U.S. 79 (2000)] requires courts to undertake detailed analyses of the household budgets of low-level employees to conclude that arbitration costs in the thousands of dollars deter the vindication of employees' claims in arbitral fora." *Id.*
>
> Moreover, in addressing the effect of arbitration costs on a class, the reviewing court should look to average or typical arbitration costs, because that is the kind of information that potential litigants will take into account in deciding whether to bring their claims in the arbitral forum. In considering the decision-making

process of the typical member of a class, it is proper to take into account the typical or average costs of arbitration.

In analyzing this issue, reviewing courts should consider the costs of litigation as the alternative to arbitration . . . but they must weigh the potential costs of litigation in a realistic manner. In many, if not most, cases, employees (and former employees) bringing discrimination claims will be represented by attorneys on a contingency-fee basis. Thus, many litigants will face minimal costs in the judicial forum, as the attorney will cover most of the fees of litigation and advance the expenses incurred in discovery. Thus, in many cases it might be concluded that, considering the costs incurred by the employee litigant, there is little or no difference between the expenses of the judicial and arbitral fora—with one important exception. In the arbitral forum, the litigant faces an additional expense—the arbitrator's fee and costs—which are never incurred in the judicial forum. *See Cole* [*v. Burns Int'l Sec. Serv.*], 105 F.3d [1465,] 1484 ("[W]e are unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case."). Reviewing courts must consider whether the litigant will incur this additional expense and whether that expense, taken together with the other costs and expenses of the differing fora, would deter potential litigants from bringing their statutory claims in the arbitral forum. The issue is not "the fact that [the] fees would be paid to the arbitrator," *Bradford* [*v. Rockwell Semiconductor Sys, Inc.*], 238 F.3d [549,] 556, but rather whether the "overall cost of arbitration," *id.*, from the perspective of the potential litigant, is greater than "the cost of litigation in court," *id.*

Finally, under this analysis, the reviewing court should discount the possibilities that the plaintiff will not be required to pay costs or arbitral fees because of ultimate success on the merits, either because of cost-shifting provisions in the arbitration agreement or because the arbitrator decides that such costs or fees are contrary to federal law. The issue is whether the terms of the arbitration agreement itself would deter a substantial number of similarly situated employees from bringing their claims in the arbitral forum, and thus the court must consider the decision-making process of these potential litigants. In many cases, if not most, employees considering the consequences of bringing their claims in the arbitral forum will be inclined to err on the side of caution, especially when the worst-case scenario would mean not only losing on their substantive claims but also the imposition of the costs of the arbitration.

*Id.* at 663-64 (footnotes omitted).

The relevant cost-sharing provision of the Agreement states: "Each party shall pay its own

proportionate share of the arbitrator fees and expenses. Each party is responsible for their own

legal fees, costs, expert witness fees, and any other costs or fees associated with the arbitration."
(ECF #10 at PageID 56). The Policy & Procedure Manual contains similar language. (*Id.* at PageID
71).

Ms. Clark argues the cost-sharing provision prevents her from vindicating her rights under
the ADA and Ohio law. Ms. Clark references the American Arbitration Association's Commercial
Rules, which currently list the smallest filing fee as an initial fee of $925 and a final fee of $800.
(ECF #11 at PageID 89). Ms. Clark also relies on a study referenced in *Morrison*, which claimed
that a plaintiff forced to arbitrate a typical $60,000 employment discrimination claim will incur
costs ranging from three to fifty times the basic costs of litigating in a judicial forum. *Id.* (citing
*Morrison*, 317 F.3d at 669 and Public Citizen, The Costs of Arbitration 40-42 (2002)).

In response, S&G Stores points out that the AAA Commercial Rules allow filing fees to be
deferred or reduced upon the submission of an affidavit of hardship. (ECF #13 PageID 102). S&G
Stores notes that while the Commercial Rules contemplate that the arbitrator's fees and other
expenses shall be borne equally by the parties, it leaves open the possibility that the parties may
agree otherwise or make other arrangements for arbitrator compensation and deposit amounts. *Id.*

Under *Circuit City*, I start by defining the class of similarly situated potential litigants by job
description and socioeconomic background. According to Ms. Clark's Memorandum in
Opposition, she was employed as a cashier. (ECF #11 at PageID 88). Her temporary employment
brought in $16.50 per hour before taxes, and her minimum monthly expenses totaled $1,480.
(*Id.*). Ms. Clark has "less than $1 in her bank account" and filed a motion to proceed in forma
pauperis because she could not afford the $400 filing fee. (*Id.*; *see also* ECF #2). As of May 2021,
the mean annual salary of cashiers in the United States was $26,770. U.S. Bureau of Labor,

*Occupational Employment and Wage Statistics*, http://www.bls.gov/oes/current/oes412011.htm#nat (last visited Nov. 4, 2022). Although socioeconomic backgrounds and costs of living may vary among cashiers, I conclude many potential plaintiffs in this class would struggle to make ends meet. *See* Jeffrey Juclik and Don Leonard, Millions of Working Americans Still Can't Afford Food and Rent, Ohio State News, http://news.osu.edu/millions-of-working-americans-still-cant-afford-food-and-rent/ (last visited Nov. 4, 2022) (noting that "27 million workers are concentrated in two industries: retail trade and leisure and hospitality. These two industries are among America's largest employers and pay the lowest average wages.").

In addressing the effect of arbitration costs on a class, I am required to look to average or typical arbitration costs, because that is the kind of information that potential litigants will consider in deciding whether to bring their claims in the arbitral forum. *Morrison*, 317 F.3d at 644. Both parties cite to the costs associated with arbitration before the AAA. However, the Agreement specifically states: "The American Arbitration Association *shall not* be used to facilitate arbitration." (ECF #10 at PageID 56) (emphasis added). The parties have agreed to conduct the arbitration in accordance with the AAA's Commercial Rules and, if the parties cannot agree on an arbitrator, they have agreed to allow AAA to select their arbitrator. (*Id.).* But the Agreement clearly prohibits the parties from actually using AAA to conduct or administer the arbitration. In doing so, the parties presumably intended to avoid administrative fees such as the initial filing and final fees Ms. Clark cited. Thus, the only fees incurred by arbitration (that would not be incurred in a judicial forum) are the arbitrator's fees, which, by contract, the parties have agreed to share.

Considering plaintiffs who are similarly situated to Ms. Clark with respect to income and resources, I find that the cost-splitting provision as written would not deter a substantial number

8

of similarly situated litigants. Although the Agreement requires the parties to bear their own costs associated with arbitration, many of those costs are avoided by the agreement to not use AAA to facilitate the arbitration. Only the arbitrator's fee remains. Even in the face of financial hardship, which likely impacts most of the plaintiff's socioeconomic class, I do not find on the record before me that an agreement to split an arbitrator's fee, when coupled with a lack of other potential costs to the plaintiff, would deter a *substantial* number of plaintiffs from bringing claims. Moreover, nothing in the Agreement prevents the parties from agreeing to defer costs or create a longer-term payment plan for Ms. Clark's share of the arbitrator's fee.

For these reasons, I conclude the cost-sharing provisions of the Agreement and the Policy & Procedure Manual do not invalidate the parties' agreement to arbitrate.

**B.    The limitation of remedies language in the Agreement and the Policy & Procedure Manual is impermissible.**

Ms. Clark next argues that the limitation of damages language in the Agreement and the Policy & Procedure Manual renders those documents unenforceable. (ECF #11, Page ID 90). The relevant portion of the Agreement states: "The arbitrator shall have no authority to award punitive, consequential, and special, and/or indirect damages.  The arbitrator shall not be entitled to issue injunctive and other equitable relief." (ECF #10 at PageID 56). Similar language appears in the Policy & Procedure Manual. (*Id.* at PageID 70-71).

Limitations on the damages a claimant may recover from arbitration may be unenforceable where a party, in agreeing to arbitrate a statutory claim, agrees to forgo the substantive rights afforded by that statute. *See Morrison*, 317 F.3d at 670 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). As Ms. Clark points out, the *Morrison* Court determined that enforcement of the arbitration agreement would "require Morrison to forego her substantive rights

9

to the full panoply of remedies under Title VII and would thereby contravene Congress's intent to utilize certain damages as a tool for compensating victims of discrimination and for deterring employment discrimination more broadly." *Id.* The critical question for courts analyzing a provision limiting available remedies "is not whether a claimant may obtain *some* amount of the entire range of remedies [under Title VII], but whether the limitation on remedies at issue undermines the rights protected by the statute." *Id.*

In *Morrison*, the Sixth Circuit looked to the purpose of Title VII and found the limitation on remedies provision impeded Title VII's remedial goal of "'making persons whole for injuries suffered through past discrimination.'" *Id.* (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)). The Sixth Circuit found the limitation on remedies provision interfered with the purpose of Title VII because the provision allowed only injunctive relief, including reinstatement; one year of backpay and reimbursement for lost fringe benefits (which may be further reduced by interim earnings or public/private benefits received); two years of front pay if reinstatement is not possible; compensatory damages in accordance with applicable law; and punitive damages up to $5,000 or the sum of a claimant's backpay and front pay awards, whichever is greater. *Morrison*, 317 F.3d at 670-71.

Here, Ms. Clark brings suit under the ADA (and parallel provisions of Ohio law). In enacting the ADA, Congress intended it to achieve the following purposes:

> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

To effectuate these purposes, multiple remedies are available to persons aggrieved under the ADA. These include "compensatory and punitive damages, in addition to any relief authorized [by the Civil Rights Act of 1964] from the respondent." 42 U.S.C. § 1981a(2). Equitable relief is also available:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1). Additionally, a court may, in its discretion, award reasonable attorney's fees (including expert fees) to the prevailing party. 42 U.S.C. § 2000e-5(k).

The question is "whether, in fact, the Arbitration Provision prevents [the plaintiff] from obtaining relief he could achieve in the judicial forum." *Gilchrist v. Inpatient Med. Services, Inc.*, 5:09CV02345, 2010 WL 3326742, at *5 (N.D. Ohio Aug. 23, 2010). Plainly, by eliminating the arbitrator's ability to award punitive, consequential, special, and indirect damages, as well as equitable or injunctive relief, the limitation of remedies provisions interfere with Ms. Clark's rights under the ADA. Congress specifically intended these types of remedies be available to persons whose statutory rights under the ADA are violated. An attempt to limit the availability of those remedies interferes with Congress' purpose in drafting 42 U.S.C. § 2000e-5(g), (k) and 1981a(2).

11

S&G Stores appears to admit as much. In responding to Ms. Clark's argument, S&G Stores makes no substantive statement regarding the appropriateness of the limitation of remedies language. Instead, S&G Stores couches the argument as one relating to severability. (ECF #13 at PageID 104). S&G Stores argues that "the Court should sever the cost-splitting provision, and/or the limitation-on-remedies provision, if necessary, so that the remainder of the agreement may be enforced." *Id.*

I address severability of the limitation on remedies provisions below. But, on its face, these provisions interfere with Ms. Clark's substantive rights under the ADA, and S&G Stores has not asserted otherwise. Therefore, under *Morrison* and *Gilchrist*, I conclude the limitation on remedies provisions of the Agreement and the Policy & Procedure Manual are not enforceable.

## C.      The requirement to arbitrate employment-related claims is not unconscionable.

Ms. Clark also argues that the Agreement is unconscionable under Ohio law. (ECF #11 at PageID 91-92). She posits the Agreement is substantively unconscionable because of the cost-splitting and limitation on remedies provisions and procedurally unconscionable because Ms. Clark had no meaningful choice to review, negotiate, and sign the Agreement. (*Id.*).

In Ohio, "for an arbitration clause to be rendered invalid for unconscionability, it must be both procedurally and substantively unconscionable." *Madhat v. Lipsey Comms., LLC*, No. 5:20-cv-764, 2020 WL 5250453, at *5 (N.D. Ohio Sept. 3, 2020). The procedural unconscionability prong focuses on the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming the provision is unconscionable was represented by counsel at the time the contract was executed. *Id.* (citing *Schaefer v. Jim Brown, Inc.*, 33 N.E.3d 96, 99 (Ohio Ct. App. 2015)). "When considering the relative bargaining positions of

12

the parties, courts must consider factors such as the parties' ages, education, intelligence, business acumen and experience, and who drafted the contract." *Id.* (citing *Robinson v. Mayfield Auto Group, LLC*, 100 N.E.3d 978, 984 (Ohio Ct. App. Dist. 2017)).

Ms. Clark did not address her age, education, intelligence, or business acumen and experience. She did not provide evidence that she attempted to negotiate or change any provisions of the Agreement prior to signing. She mentions only that she drafted none of the terms, and that if she wanted to be an employee, she had to sign it. (ECF #11 at PageID 92). In Ohio, in the context of employment contracts, when a candidate for employment is free to look elsewhere for employment and is not otherwise forced to consent to the arbitration agreement, the agreement to arbitrate is not unconscionable. *Madhat*, 2020 WL 5250453 at *6; *see also Post v. Procare Automotive Serv. Solutions*, No. 87646, 2007 WL 1290091, at *10 (Ohio Ct. App. May 3, 2007) (Cooney, J., concurring in part); *Melia v. Officemax N. Am., Inc.*, No. 87249, 2006 WL 2627448, at *5 (Ohio Ct. App. Sept. 14, 2006). Although all indications are that S&G Stores drafted the Agreement and that Ms. Clark was not represented by counsel when she signed it, there is no evidence that Ms. Clark was not free to look elsewhere for employment or was otherwise forced to consent to the Agreement.

I agree with S&G Stores that generalized grievances related to an arbitration agreement—such as an employer's superior knowledge and an employee's perceived inability to alter the agreement—would potentially invalidate nearly all employment-related arbitration agreements, and this runs contrary to the general presumption under federal and Ohio law favoring enforcement of arbitration agreements. (ECF #13 at PageID 107) (citing *Madhat*, 2020 WL 5250453 at *14 and

13

*Sikes v. Ganley Pontiac Honda, Inc.*, No. 82889, 2004 WL 67224 at *2 (Ohio Ct. App. Jan. 15, 2004)).

Because I find the Agreement is not procedurally unconscionable, there is no need to address its substantive unconscionability. Ohio law requires both procedural and substantive unconscionability to render an arbitration agreement invalid. *Madhat*, 2020 WL 5250453 at *6.

Accordingly, I conclude the Agreement is not invalid due to unconscionability.

### D.    The limitation on remedies provision of the Agreement is severable.

Finally, Ms. Clark argues that if any of the provisions of the Agreement are unenforceable, then the entire Agreement is unenforceable because its lacks a severability clause. (ECF #11 at PageID 92). Because I have found the limitation on remedies provision impermissible, I must now determine whether that provision dooms the entire Agreement. For the reasons that follow, I find that the offending provision can be severed and therefore the remaining portions of the Agreement are enforceable.

Whether a part of a contract may be severed from the remainder "depends generally on the intention of the parties, and this must be ascertained by the ordinary rules of construction." *Ignazio v. Clear Channel Broad., Inc.*, 865 N.E.2d 18, 20 (Ohio 2007) (quotation omitted). Notably, the Agreement itself does not contain an explicit severability clause. (ECF #10 at PageID 56). However, even where a contract does not contain a severability clause, provisions may still be severed if it was the intent of the parties to do so.

For example, in *Gaither v. Wall & Associates, Inc.*, 79 N.E.3d 620, 629 (Ohio Ct. App. 2017), an Ohio appeals court severed an offending provision despite the lack of severability clause. In that case, the court found that a "loser pays" clause—which required the losing party to pay

14

costs, including attorney fees, to the prevailing party—was substantively unconscionable. *Id.* at 631.

The court reasoned:

> In light of the strong policy for arbitration . . . the best approach is to excise the offending provision but still allow enforcement of the agreement to arbitrate. [This is consistent with] the principle that an offending provision in an agreement may be severed if it "does not fundamentally alter the otherwise valid and enforceable provisions of the agreement." In *Ignazio*, the court relied on the fact that the agreement had an express severance clause, and on "Ohio's strong public policy in favor of arbitration of disputes."
>
> Although [this] contract lacks an express severance clause, the rest of the arbitration agreement does not depend on the "loser pays" provision, and severance would have no effect on the remaining provisions. Furthermore, as was noted, Ohio does have a robust policy favoring arbitration.

*Id.* at 632 (citations omitted).

Similarly, and as discussed in S&G Stores' Reply in Support, the Sixth Circuit severed an arbitrator-selection provision in the absence of an explicit severability clause:

> Although "[t]he selection of an arbitrator is clearly at the heart of any arbitration agreement," *Morrison*, 317 F.3d at 679, even a cursory reading of this particular arbitration agreement reveals the importance that the parties placed upon an arbitral forum for the settlement of employment disputes. As quoted earlier, arbitration was "intended to be the sole and exclusive remedy and forum for all claims"; to the extent that a court determines that it is not, resort to the arbitration process must be considered a condition precedent that must be exhausted prior to seeking judicial intervention. Without a doubt, therefore, the parties to this arbitration agreement evidenced their intent that the arbitral process was not to be sacrificed for other dispute-resolution alternatives.
>
> In addition to the language and structure of the agreement itself, another important consideration supports the conclusion that the offending provision should be severed and the remainder of the agreement enforced. Throughout the years, courts have emphasized the importance of arbitration in the resolution of disagreements between parties in the employment setting. Indeed, "Supreme Court precedent dictates that we resolve any doubts as to arbitrability 'in favor of arbitration.'" *Id.* at 675 (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). In light of this strong preference in favor of arbitration, as well as the parties' expectations that an arbitral forum would be utilized

to resolve employment disputes, we decline to prevent use of the chosen method of resolution simply because one, easily-remedied problem surfaces.

*McMullen v. Meijer, Inc.*, 166 Fed. Appx. 164, 168-69 (6th Cir. 2006).

I am guided by the conclusions in *Gaither* and *McMullen*. In this case, the Agreement reflects the importance the parties placed on an arbitral forum for resolving employment disputes. Specifically, the parties agreed that any dispute "shall be exclusively resolved by binding arbitration" and that "this agreement to arbitrate shall be specifically enforceable." (ECF #10 at PageID 56). Ms. Clark signed the Agreement and consented to arbitration on April 19, 2019. (*Id.*). The Agreement is also repeated verbatim in S&G Stores' Policy and Procedure Manual, which the parties again agreed to via email four days later, on April 23, 2019. (ECF #10 at PageID 81). Neither document contemplates any other forum for dispute resolution.

I do not believe the limitation on remedies provision is so fundamental to the intention to arbitrate that it dooms the entirety of the Agreement, and therefore believe severing that provision is appropriate. I decline to "prevent use of the chosen method of resolution simply because one, easily-remedied problem surfaces." *McMullen*, 166 Fed. Appx. at 169. Even if some doubt exists as to the intent of the parties, "there is a strong presumption in favor of arbitration, and any doubts should be resolved in its favor." *Ignazio*, 865 N.E.2d at *22 (citation omitted).

Accordingly, I sever the limitation of remedies provisions from the Agreement and the Policy & Procedure Manual. The remaining provisions of those documents compel enforcement of the parties' agreement to arbitrate their disputes.

## II.  An order dismissing, not staying, this matter without prejudice is appropriate.

Having independently considered each of these factors, and as discussed above, I find there is a broad, enforceable agreement to arbitrate between Ms. Clark and S&G Stores. Further, each

of the causes of action set forth in Ms. Clark's Complaint, including the federal statutory claims, have been held properly subject to an order compelling arbitration. The ADA states that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes under this Act." 42 U.S.C. § 12212; *see also Barna v. Wackenhut Services, LLC*, No. 1:07-CV-147, 2007 WL 3146095, at *7 (N.D. Ohio Oct. 25, 2007) ("Congress did not intend for Plaintiff's ADA claims to be non-arbitrable."). Ohio state law disability discrimination claims have also been found to be arbitrable. *See Cunningham Malhoit v. Salomon Smith Barney, Inc.*, No. L-02-1277, 2003 WL 21255947, at *4 (Ohio Ct. App. May 30, 2003).

Accordingly, the limitation on damages provisions is invalidated and severed from the remainder of the Agreement and the Policy & Procedure Manual. An order compelling arbitration of each of Ms. Clark's claims against Defendants in accordance with the remainder of the Agreement and otherwise dismissing this action without prejudice is appropriate. *See Robinson v. Credit One Bank, N.A.*, No. 1:20-CV-00492, 2020 WL 3270690, at *2 (N.D. Ohio June 17, 2020) ("[B]ecause all of Robinson's claims are subject to arbitration, dismissal is warranted.").

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I find the limitation on remedies provisions in the Agreement and the Policy & Procedure Manual are impermissible, and I hereby sever them from those documents. Under the remainder of the Agreement and the Policy & Procedure Manual, Ms. Clark is required to arbitrate her claims

against S&G Stores. Accordingly, I hereby **GRANT** the Motion to Compel Arbitration (ECF #10)

and **DISMISS** this case without prejudice.

      Dated: November 4, 2022

 

                                          _____

                                          DARRELL A. CLAY
                                          UNITED STATES MAGISTRATE JUDGE